Aaron K. Bergman (#13660)
BEARNSON & CALDWELL
399 North Main, Suite 270
Logan, Utah 84321
Telephone: (435)752-6300
Facsimile: (435)752-6301
Email: wcaldwell@bearnsonlaw.com
For emails, please cc: bjensen@bearnsonlaw.com
*Attorneys for Petitioners*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT and AMIE PANICACCI, as legal guardian and parent of G.P., a minor<br><br>Plaintiffs,<br><br>v.<br><br>WEST ADA SCHOOL DISTRICT #2,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br>**Appeal of Due Process Hearing** |

COME NOW the Plaintiffs, ROBERT PANICACCI and AMIE PANICACCI, for an on behalf of their minor child, G.P. ("Plaintiffs"), by and through their legal counsel, Aaron K. Bergman and BEARNSON & CALDWELL, LLC, as individuals and citizens aggrieved by certain findings and decisions made against them at a Due Process Hearing.

## **NATURE OF ACTION**

Using irregularities caused by the COVID-19 pandemic, West Ada School District #2 ("Defendant") rejected a student's Individualized Educational Plan ("IEP") and

refused to provide him with the special educational services required. Robert and Amie Panicacci, for and on behalf of their child, G.P. (hereafter collectively "Plaintiffs"), filed a "Due Process Complaint" and now seek appropriate relief from the Hearing Officer's findings and decision. See 20 U.S.C. § 1415.

## PARTIES

1. Plaintiffs ROBERT PANICACCI and AMIE PANICACCI are individuals residing in Meridian, Ada County, Idaho.  Mr. and Mrs. Panicacci are the biological parents of G.P., a minor student attending Defendant's school.

2. Defendant WEST ADA SCHOOL DISTRICT #2 is a political subdivision of the State of Idaho, with a principal place of business is in Meridian, Ada County, State of Idaho.

## JURISDICTION & VENUE

3. This Court has jurisdiction. See 20 U.S.C. § 1415(i)(3)(A) (IDEA grants right of civil action); see also 28 U.S.C. 1331 (federal question).

4. This Court has venue. See 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

5. G.P. is currently a student at Defendant's school, and suffers from Autism and a communication learning disability.

6. At G.P.'s prior school in California, G.P. had an IEP.  However, due to a world-wide pandemic (Covid-19), many of the schools in California closed their doors

and had remained closed since March of 2020. G.P.'s prior school in California was one of those schools.

7. On or about September 18, 2020, Plaintiffs moved to Idaho.

8. In preparation for the move, G.P.'s school in California created a carry-over IEP, extending G.P.'s pre-pandemic IEP into October of 2020, so that G.P.'s entitlement to special educational services would follow him to Idaho.

9. G.P.'s parents arrived and enrolled G.P. at Defendant's school.

10. However, Defendant then promptly rejected G.P.'s already established IEP on the grounds that G.P.'s carryover IEP lacked those details necessary, and had, inside of G.P.'s pre-pandemic IEP.

11. West Ada then promptly created for G.P. a new IEP, with reduced services. Pertinent to this Complaint, West Ada reduced G.P.'s one-on-one speech and language therapy services, and refused to provide G.P. with a full-time Autism-Behavioral-Analyst (ABA) therapist.

12. Utilizing the Procedural Safeguards as set forth in the Individuals with Disabilities Education Act (hereafter the "IDEA"), Plaintiffs filed a Due Process Complaint with the Idaho Department of Education.

13. The Hearing Officer denied the Plaintiffs' Complaint in its entirety.

## FIRST CAUSE OF ACTION
## APPEAL OF DUE PROCESS HEARING

14. Plaintiffs incorporate herein by reference each of the foregoing paragraphs.

15. Congress purposed the IDEA to ensure that all disabled children could meaningfully enjoy the services, activities, programs, as well as social and societal benefits of a primary education. Under the IDEA, all students are entitled to a Free, Appropriate, and Public Education (hereafter a "FAPE").

16. G.P. is a disabled student, and under the IDEA he and is entitled to a FAPE.

17. Prior to moving to Idaho, G.P.'s parents advocated for and obtained for G.P. the special educational service of a fulltime ABA therapist. Prior to that time, G.P. had received supervision services by an uncertified and unqualified aid.

18. Plaintiffs gave Defendant a copy of G.P.'s carry-over IEP and of his pre-pandemic IEP. Using these documents and their conversations with Plaintiffs, despite the lack of specificity existing in G.P.'s carryover IEP, Defendant knew what services G.P. had been entitled to in California, and that such included a fulltime ABA therapist and one-on-one speech therapy for a set number of hours per week.

19. Notwithstanding, because the carryover IEP did not contain the details of G.P.'s pre-pandemic IEP, Defendant rejected G.P.'s IEP.

20. Defendant then, without conducting its own full evaluation, instituted a new IEP that removed G.P.'s fulltime ABA therapist and one-on-one speech therapy.

21. Defendant also repeatedly threatened G.P.'s parents that should they not accept the Defendant's new IEP, G.P. would be thrust into general education without any special educational services at all.

22. Plaintiffs requested that Defendant provide G.P. with an Independent Educational Evaluation. West Ada refused.

23. The following errors are raised. First, the Hearing Officer found and held that G.P.'s pre-pandemic IEP "does not apply to this case" and that the "IDEA does not require that Respondent provide the same or comparable services to an expired IEP[.]" This was error. West Ada knew that G.P. had an IEP in California. West Ada also fully understood the quality and quantity of services due to G.P. under his California IEP. By ruling that Defendant was right to disregard G.P.'s pre-pandemic IEP, and reject G.P.'s purportedly nonconforming carryover IEP, the Hearing Officer turned a blind-eye to the circumstances and blatantly elevated form over substance. Defendant's improper disregard of known and established special educational services to which G.P. was already entitled was a blatant violation of the IDEA.

24. Second, the Hearing Officer held that by Plaintiffs withholding their consent for the School to conduct further evaluations of G.P., G.P.'s parents had waived their right to claim any denial of FAPE. This too was in error. The facts showed that Defendants had conducted some cursory evaluations of G.P., such as reviewing the educational record and speaking with parents, before rejecting G.P.'s California IEP and implementing an entirely new IEP with different services. At this juncture, Plaintiffs demanded G.P. be provided with services equal to those required under G.P.'s California IEP, and again, Defendant refused. Wherefore, an IEE was the Plaintiffs' right. See 34

C.F.R. § 300.502 (parent has the right to an independent evaluation if parent disagrees with evaluation); see also 34 C.F.R. § 300.15 (broadly defining 'evaluation' to include less than a complete evaluation).

25.     Afterwards, Defendant demanded that G.P. submit to Defendant's directed behavioral evaluations, to determine whether G.P. 'really needed' an ABA therapist. G.P.'s parents refused, and as stated above, demanded an IEE.

26.     The reason why the Hearing Officer's ruling is grievous to be borne under such circumstances. Under the Hearing Officer's decision, a child who moves to another state can be effectually stripped of his or her special educational services, and then forced to submit to testing to prove up the need for those already required services. This is not what Congress intended.

27.     The law provides that when a disabled student transfers to a new school in a new state, the school "shall provide such child with a free appropriate public education, *including services comparable to those described in the previously held IEP*" and that those same services must continue until the new school "*conducts an evaluation . . . if determined to be necessary . . . and develops a new IEP[.]*" 20 U.S.C. § 1414(d)(2)(C)(i)(II). (emphasis).

28.     Here, the Defendant did the exact opposite from what Congress intended. Namely, Defendant took G.P.'s fulltime ABA therapist and one-on-one speech therapy away, and then refused to implement those services unless G.P. submitted to an

evaluation. Wherefore, the Hearing Officer decision frustrates Congress's clear intent. According to the Hearing Officer's decision, a school can strip a new student of his or her special educational services, and then demand the student undergo testing to substantiate the need for those services. Congress, in contrast, expressly intended a continuation, not a "prove-it-or-lose-it" system of special education for new students.

29. With the above correct law in the backdrop, it is clear that Defendant never lawfully sought Plaintiffs' consent for further evaluation. Defendant stripped G.P. of his services, demanded G.P. undergo additional evaluations to get those services back, and threatened Plaintiffs that if they did not accept Defendant's new IEP, G.P. would be thrust into general education with no services at all. Such is not a lawful request for consent. It is extortion. See BLACK'S LAW DICTIONARY, 272 (3d Pckt. Ed. 2006) ("obtaining something or compelling some action by illegal means as by force or coercion"). Regardless, as already set forth above, Plaintiffs had lawfully requested and were entitled to an IEE, which Defendant denied. Wherefore, the Hearing Officer's decision, in that Plaintiffs' waived their requested relief by way of refusing to provide consent for further evaluation, is error.

30. Finally, the Hearing Officer held that *Plaintiffs* failed to show that the services rendered by a paraprofessional were different than those rendered by an ABA therapist. This was error both procedurally and substantively. The facts showed that Defendant was the one who rejected G.P.'s California IEP, not Plaintiffs. The facts

showed that it was Defendant who refused to provide G.P. with an ABA therapist unless he submitted to additional testing. Procedurally, therefore, where it was *Defendant* who refused to implement an existing IEP, it was then *Defendant's* burden to prove that its implementation of paraprofessional services were in fact equivalent to an ABA therapist.

31. Substantively, the Hearing Officer's order regarding what Plaintiffs had shown is incorrect. On the issue of whether paraprofessional services were equivalent, Plaintiffs called an ABA specialist who repeatedly explained how the services of an ABA therapist are distinguishable from the services of a paraprofessional. However, when the witness was first asked the direct question of whether the services of an ABA therapist and paraprofessional were comparable, she began her answer with a "Yes." The witness's statement was then followed by several distinguishing explanations. As such, the witness's "Yes" was indicative of a witness acknowledging an expected question, not of the witness's actual conclusions. This was apparent by the witness's testimony. Furthermore, by Defendant's own admission, Defendant refused to provide G.P. with an ABA therapist absent additional testing. Furthermore, Defendant testified, it intended to but failed to provide its Special Ed teacher, who was overseeing the assigned paraprofessional, with ABA training to ensure that the services G.P. received were in fact comparable. Wherefore, it was certainly shown that the paraprofessional services Defendant provided to G.P. are not comparable or equivalent to the ABA therapy

services G.P. was entitled to under his California IEP. Wherefore, the Hearing Officer's decision is in error.

32.     The Court should reverse the Hearing Officer's decision and order Defendant to pay Plaintiffs' fees and costs as provided for by rule and statute.

## **PRAYER FOR RELIEF**

The Court should award Plaintiffs with the following relief, in addition to any relief that the Court deems just and equitable under the circumstances:

A.     Order that West Ada violated the IDEA by rejecting and refusing to implement G.P.'s FAPE, including those services or equivalent services required by G.P.'s California IEP;

B.     Order that West Ada violated the IDEA by refused to provide Plaintiffs with an IEE for further behavioral assessments and evaluations;

C.     Order that West Ada violated the IDEA by refusing to implement already required services absent Plaintiffs consenting to further evaluations for those services.

D.     Order that West Ada provide G.P. with a fulltime ABA therapist and one-on-one speech therapy, as required under G.P.'s California IEP;

E.     Order that the foregoing services to G.P. must continue until additional evaluations are deemed necessary by the IEP team, are completed, and a new IEP is established.

F.     Order that insofar as the IEP team determines additional evaluations are necessary, such first be conducted via an Independent Educational Evaluation, at the Defendant's cost;

G.     Costs, litigation expenses, and reasonable attorney's fees to Plaintiffs; and

H.     Any other relief that the Court deems just and equitable under the circumstances of this particular case.

DATED this 16th day of August, 2021.

BEARNSON & CALDWELL, LLC


/s/ Aaron K. Bergman
Aaron K. Bergman
*Attorneys for Plaintiffs*