UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| ROBERT and AMIE PANICACCI, as legal guardians and parents of G.P., a minor,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>WEST ADA SCHOOL DISTRICT #2,<br><br>　　　　Defendant. | No. 1:21-cv-00329-WBS<br><br>MEMORANDUM AND ORDER RE: MOTION TO AMEND PLEADINGS |

----oo0oo----

Plaintiffs brought this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, to seek review of a hearing officer's determination as to their child's eligibility for special education services. (Compl. (Docket No. 1).) Before the court is their Motion to Amend Pleadings, through which plaintiffs seek leave to add claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Rehabilitation Act ("RA"), 20 U.S.C. § 1415. (Mot. (Docket No. 18).) Defendant West Ada School

1

1  District #2 (the "District") opposes plaintiffs' request, arguing
2  that the proposed amendment is futile because plaintiffs failed
3  to exhaust administrative remedies that are prerequisites to
4  bringing ADA and RA claims.  (Opp. (Docket No. 19).)

I. Legal Standard

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading with the court's leave, which should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "[R]equests for leave should be granted with 'extreme liberality.'" Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted).  Leave "should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Johnson v. Mammoth Recreations, 975 F.2d 604, 607 (9th Cir. 1992).

"An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" Missouri ex rel. Koster v. Harris, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted).  Failure to exhaust administrative remedies where required in order to assert a claim renders amendment to add such a claim futile. Patterson v. Kelso, 698 F. App'x 393, 394 (9th Cir. 2017); Givens v. Cate, 362 F. App'x 620, 621 (9th Cir. 2010). "A defendant bears the burden of establishing that a proposed amendment is futile . . . ." Nguyen v. Thermo Fisher Sci., Inc., 18-cv-6728 DMG (JCx), 2019 WL 13039947, at *1 (C.D. Cal. Mar. 21, 2019) (citation omitted).

The District does not contend that the requested amendment would cause it prejudice if granted, that plaintiffs

2

1  have unduly delayed their request, or that the request is made in
2  bad faith or with a dilatory motive.  (See Opp.)  Instead, it
3  contends plaintiff failed to exhaust the required administrative
4  process in two respects.  The court will address each in turn.
5  II.  <u>Identification of Issues in Administrative Hearing</u>
6           First, the District argues that plaintiffs did not
7  identify during the IDEA administrative process the issues
8  "concerning access to the school or programs or activities" upon
9  which they seek to base their ADA and RA claims.  (Id. at 6.)
10 Although counsel for the District acknowledged at oral argument
11 that plaintiffs were not required to specifically reference the
12 ADA or RA during the administrative process, the District argues
13 that plaintiffs were required to present facts pertaining to the
14 programs from which they claim their child was excluded but
15 failed to do so.
16          Although the relevant portions of the ADA and RA do not
17 themselves include an exhaustion requirement, the IDEA provides:
18
     Nothing in [the IDEA] shall be construed to restrict or
     limit the rights, procedures, and remedies available under
19   the Constitution, the [ADA], [the Rehabilitation Act], or
     other Federal laws protecting the rights of children with
20   disabilities, except that before the filing of a civil
     action under such laws seeking relief that is also available
21   under [the IDEA], the [IDEA's administrative procedures]
     shall be exhausted to the same extent as would be required
22   had the action been brought under [the IDEA].
23 D.D. ex rel. Ingram v. L.A. Unified Sch. Dist., 10 F.4th 1043,
24 1049 (9th Cir. 2021) (en banc) (quoting 20 U.S.C. § 1415(l))
25 (alterations in original).  This requirement is "'designed to
26 channel requests for a FAPE[1] (and its incidents) through IDEA-
27 ─────────────
       [1]   "Free appropriate public education" (or "FAPE") is a
28 central term in the IDEA.  The stated purpose of the IDEA is to

prescribed procedures' and prevents plaintiffs from using artful pleading to litigate IDEA issues without first utilizing the IDEA process." Id. (quoting Payne v. Peninsula Sch. Dist., 653 F.3d 863, 882 (9th Cir. 2011) (en banc), overruled on other grounds, Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc)) (other citations omitted).

Plaintiffs do not appear to dispute that the IDEA's exhaustion requirement applies to the ADA and RA claims they seek to bring. (See Reply at 4-7 (Docket No. 20).) As the Ninth Circuit has explained:

> [E]xhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973, premised on a denial of a FAPE).

Payne, 653 F.3d at 875 (citation omitted). Here, plaintiffs acknowledge that their proposed ADA and RA claims are premised on the District's alleged denial of a free appropriate public education to their child, G.P. (Reply at 4-7.) Accordingly, the exhaustion requirement applies. See D.D., 18 F.4th at 1048 ("[I]f the gravamen of [a plaintiff]'s complaint is the school's failure to provide a FAPE, he must first exhaust the IDEA process before seeking ADA relief."); see also Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.").

The parties do dispute, however, whether the exhaustion

---

ensure all children in the United States have access to a "free appropriate public education." 20 U.S.C. § 1400(d)(1)(A).

4

1   requirement was satisfied by virtue of plaintiffs' participation
2   in an administrative Due Process Hearing.  (Opp. at 6-8; Reply at
3   4-7.)  The court concludes that it was.
4         As a threshold matter, defendant has not established
5   that, if a plaintiff challenges an alleged denial of a FAPE
6   through the IDEA administrative process, he must make any
7   additional showing or argument during that process to be able to
8   bring a subsequent ADA or RA claim in court.  The Ninth Circuit
9   has "indicate[d] that asserting IDEA violations at the
10  administrative level is sufficient to satisfy the exhaustion
11  requirement with respect to claims under § 504 [of the RA],"
12  Wiles v. Dept. of Educ., 555 F. Supp. 2d 1143, 1161 (D. Haw.
13  2008) (citing Mark H. v. Lemahieu, 513 F.3d 922, 935 n.11 (9th
14  Cir. 2008)), and the District does not dispute that plaintiffs
15  here have asserted IDEA violations at the administrative level.
16  See id. at 1162 ("Plaintiffs have unquestionably availed
17  themselves of the administrative procedures in the IDEA.  Indeed,
18  § 1415(l) simply states that plaintiffs who are seeking relief
19  that is also available under the IDEA must first go through the
20  IDEA administrative proceedings.").  It would make little sense
21  to require an additional showing at the administrative level
22  where, as the Supreme Court has explained, it will frequently be
23  the case that "the hearing officer cannot provided the . . .
24  relief" requested under ADA or RA claims, even where "the ADA or
25  Rehabilitation Act might require the [requested] accommodation."
26  Fry v. Napoleon Cmty. Schs., 137 S. Ct. 743, 754 (2017).
27        The District cites two decisions from district courts
28  in the Ninth Circuit "recogniz[ing] that if a claim is not

1  contained with the Due Process hearing, it is not properly before
2  the Court." (Opp. at 6-7.)  However, those cases only involved
3  appeals of decisions by administrative hearings officers under
4  the IDEA and did not involve ADA or RA claims.  See B.B. ex rel.
5  K.B. v. Dept. of Educ., 20-cv-350 HG WRP, 2021 WL 1886298, at *6
6  (D. Haw. May 11, 2021); Dept. of Educ. of Haw. v. Leo W. ex rel.
7  Veronica W., 226 F. Supp. 3d 1081, 1096 (D. Haw. 2016).
8  Accordingly, those cases simply stand for the proposition that a
9  district court cannot review decisions by a hearings officer as
10 to issues that were not in fact before the officer.  Unlike an
11 administrative appeal under the IDEA, which seeks review of a
12 hearings officer's decision, claims brought under the ADA and RA
13 directly challenge decisions of an educational agency itself.
14 The cases the District cites are therefore inapposite.[2]

15         Further, even assuming plaintiffs were required to
16 present the bases for their proposed ADA and RA claims to the
17 administrative officer, the information currently before the
18 court suggests that they did.  Notably, there is substantial (if
19 not complete) overlap between the bases for plaintiffs' due
20 process challenge, as presented to the hearing officer, and the
21 ADA and RA claims they now seek to assert.  Looking to the
22 proposed amended complaint, it is clear that the gravamen of the

---

[2]  The District also cites L.P. ex rel. J.P. v. Wake Cnty. Bd. of Educ., 5:20-cv-481 BO, 2021 WL 5936219, at *7 (E.D. N.C. Dec. 15, 2021), for the proposition that "if an ADA claim or [§] 504 claim seeks relief that is also available under the IDEA, the party must first exhaust its administrative remedies."  As noted above, however, whether exhaustion is required is not in dispute; how plaintiffs were required to exhaust their ADA and RA claims is.

6

1    ADA and RA claims is an alleged denial of a free appropriate
2    public education.  The proposed ADA claim, for example, alleges
3    that (1) G.P. "required accommodations in order to meaningfully
4    participate in Defendant's programs, services, and activities";
5    (2) the particular accommodations sought are "one-on-one speech
6    and language therapy services" and "a full-time Autism-
7    Behavioral-Analyst (ABA) therapist"; (3) the District has
8    "refused" to "provide[ ] G.P. those accommodations"; and (4) as a
9    result of such refusal, G.P. has experienced "public humiliation
10   and denial of equal access."  (Mot., Ex. A, at ¶¶ 11, 39-41, 46
11   (Docket No. 18).)  In D.D., the Ninth Circuit evaluated an ADA
12   claim and concluded it constituted a challenge to a denial of a
13   free appropriate public education based on very similar
14   allegations:

> The crux of D.D.'s complaint is that the District failed to
> provide "required accommodations, aids and services" that he
> needed to "access" his education, and that "as a result" of
> its failure, he suffered loss of educational opportunity,
> exclusion from school, and harassment by others.  The
> complaint identifies the accommodations denied as a one-to-
> one aide or other supportive services to manage D.D.'s
> behavior.  These are core components of a FAPE, and ones
> that D.D. repeatedly asked the District to include in his
> IEP.[3]  In other words, the essence of D.D.'s complaint is
> that he was injured by the District's failure to provide an
> adequate special education program . . . .

22   D.D., 18 F.4th at 1054 (citing Cedar Rapids Cmty. Sch. Dist. v.
23   Garret F. ex rel. Charlene F., 526 U.S. 66, 73 (1999)).  To the
24   substantial extent to which plaintiffs' proposed ADA and RA

---

[3]    Like "free appropriate public education," "individualized education program" (or "IEP") is also a central term in the IDEA.  An IEP is an educational plan tailored to the needs of individual students with disabilities to help ensure they receive a free appropriate public education.  See 20 U.S.C. §§ 1401(9)(d), 1414(d).

7

claims are premised on an alleged denial of a free appropriate public education and rely on the same facts as their IDEA claim, the bases for the ADA and RA claims were presented during the administrative process.

The proposed ADA claim also alleges that "while other children play at recess, G.P. is left to 'run the perimeter' of the playground"; that "[w]hile other children readily participate in class, G.P. has been abandoned as a child who simply 'does not ask many questions'; and that "[i]n nearly every setting, without the appropriate accommodations, G.P. has remained an outsider, excluded, and thereby deprived of the Defendant's programs, services and activities."  (Mot., Ex. A, at ¶ 46.)  At oral argument, counsel for the District argued that these details were not presented in support of plaintiffs' due process challenge under the IDEA and therefore cannot serve as bases for ADA or RA claims.  However, counsel later acknowledged that there was "some discussion of running around during recess" at the Due Process Hearing, indicating that this was in fact presented to the hearing officer.  As for G.P.'s alleged lack of participation in class, this is merely a logical consequence of the fact that "G.P. . . . suffers from Autism and a communication learning disability" which were, as plaintiffs allege, inadequately accommodated by the District.  (Id. at ¶ 5.)  It is therefore not clear that any material allegations presented in plaintiffs' proposed ADA or RA claims were in fact withheld from the hearing officer.

Because the District has not shown either that plaintiffs were required to present facts underlying the proposed

1 ADA and RA claims to the hearing officer or that they actually
2 failed to do so, its first argument for futility fails.
3 III. <u>Consent to Behavioral Assessment by the District</u>
4       Second, the District argues that the proposed ADA and
5 RA claims are "barred" because plaintiffs refused to allow it to
6 conduct a behavioral assessment on G.P., thereby "prevent[ing]
7 the administrative process from being completed." (Opp. at 8-9.)
8 It contends that this refusal means plaintiffs lack the right to
9 challenge the District's alleged denial of a free appropriate
10 public education to G.P. (<u>Id.</u> at 8-10.) In support, it points
11 to a portion of the IDEA providing:

> If the parent of [a child with a disability] refuses to consent to the receipt of special education and related services, or the parent fails to respond to a request to provide such consent . . . the local educational agency shall not be considered to be in violation of the requirement to make available a free appropriate public education to the child . . . .

16 20 U.S.C. § 1414(a)(1)(D)(ii)(III)(aa); (Opp. at 9).
17       This statutory language does not support the District's
18 position. The subsection containing this provision distinguishes
19 at its outset between parental consent "for initial evaluation"
20 of the child and "for receipt of special education and related
21 services." 20 U.S.C. § 1414(a)(1)(D)(i)(I)-(II). It goes on to
22 describe the consequences of a parent's lack of consent "[f]or
23 initial evaluation" and, separately, "[f]or services." <u>Id.</u> at
24 § 1414(a)(1)(D)(ii)(I)-(II). The subsequent provision, upon
25 which the District relies, titled "Effect on agency obligations,"
26 specifically limits its applicability to circumstances where a
27 parent "refuses to consent to the receipt of special education
28 and related services" or "fails to respond to a request to

1  provide such consent." Id. at § 1414(a)(1)(D)(ii)(III).
2        Any reference to a parent's refusal to consent to an
3  evaluation, however, or the effect such refusal has on a school
4  district's obligations under the IDEA, is absent from this
5  provision.  This absence is conspicuous given surrounding
6  provisions' references to both "consent to an initial evaluation"
7  and "consent for services."  The omission of any reference to
8  lack of consent for an evaluation makes clear that this provision
9  does not, in and of itself, foreclose legal challenges to a
10 school district's denial of a free appropriate public education
11 where parental consent for an evaluation has been withheld.
12       Although the District points to two out-of-circuit
13 district court opinions applying this provision to bar claims
14 based on parents' failure to consent to an evaluation, those
15 opinions offer no explanation of why such application is proper
16 in light of the provision's facial inapplicability to these
17 circumstances.  See M.L. v. El Paso Indep. Sch. Dist., 610 F.
18 Supp. 2d 582, 599 (W.D. Tex. 2009); V.M. v. N. Colonie Cent. Sch.
19 Dist., 954 F. Supp. 2d 102, 117-18 (N.D. N.Y. 2013) (relying on
20 M.L. for the proposition that "after consent is withheld, the
21 school district cannot be held liable for denying a FAPE").
22 Accordingly, they are not persuasive on this issue, and the court
23 concludes that § 1414(a)(1)(D)(ii)(III) does not render
24 plaintiffs' proposed ADA and RA claims futile.
25       Because the District has not shown that the proposed
26 amendments would be futile, see Nguyen, 2019 WL 13039947, at *1,
27 the court finds good cause to grant leave to amend under Federal
28 Rule of Civil Procedure 15.

10

            IT IS THEREFORE ORDERED that plaintiffs' Motion for Leave to Amend (Docket No. 18) be, and the same hereby is, GRANTED.[4]  Plaintiffs are directed to file the Proposed First Amended Complaint attached to their Motion (Docket No. 18) within ten days of the issuance of this Order.

Dated:  May 5, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[4] The District's request for modification of the scheduling order (see Opp. at 10) is now moot.  On March 17, 2022, the court granted the parties' joint motion for modification of the scheduling order, vacating all then-existing deadlines and directing the parties to meet and confer regarding scheduling within 14 days of issuance of this Order.  (See Docket Nos. 21, 23.)  Any requests pertaining to the scheduling order should therefore be made after the parties have met and conferred, as directed by the court.